FACIT, INC., Plaintiff,

v.

KRUEGER, INC., Defendant and Counterclaim Plaintiff,

v.

FACIT, INC., Counterclaim Defendant,

and

Human Factor Technologies, Inc., Ericsson Information Systems AB, Tom Jahn and Alan Morse, Additional Defendants on Counterclaims.

No. 86 Civ. 1268 (JMW).

United States District Court,
S.D. New York.

April 13, 1987.

William H. Levit, Jr., William B. Apfeld, of the firm Godfrey & Kahn, S.C., Milwaukee, Wisc., Roger L. Zissu, of the firm Cowan, Liebowitz and Latman, P.C., New York City, for third-party plaintiff.

Susan Millington Campbell, of the firm Campbell, Patrick & Chin, New York City, for third-party defendants.

WALKER, District Judge:

## INTRODUCTION

Plaintiff Facit, Inc. ("Facit"), has brought the instant action against Defendant Krueger, Inc. ("Krueger"). Krueger's answer included counterclaims against Facit, as well as four other third-party defendants: Human Factor Technologies, Inc. ("HFT"), Ericsson Information Systems AB ("Ericsson"), Tom Jahn ("Jahn"), and Alan Morse ("Morse"). Third-Party De-fendants Jahn and Morse move to dismiss the counterclaim brought against them by Third-Party Plaintiff Krueger for lack of personal jurisdiction. For the reasons set forth below, the motion to dismiss is granted.

## STATEMENT OF FACTS

Plaintiff Facit, a Delaware corporation with its principal place of business in New Hampshire, has engaged in the marketing, sale, and distribution of office furniture specifically designed for use with computers, which the parties refer to as "computer support furniture." Defendant Krueger, a Wisconsin corporation with its principal place of business in Wisconsin and a showroom in Manhattan, also has marketed computer support furniture. Third-Party Defendants Jahn and Morse, both former Facit employees, currently serve as officers of Third-Party Defendant HFT.

Plaintiff Facit commenced the instant action on February 11, 1986, alleging that Krueger breached a June 1, 1983 settlement agreement with Facit by failing to make payments due under this settlement. Krueger had promised Facit annual payments in the June 1983 settlement agreement of at least $100,000, in return for exclusive rights to market a specific line of computer support furniture, described by the parties as the "920 Series."

Defendant Krueger's instant counterclaims allege that Plaintiff Facit, together with the third-party defendants, actually was responsible for breaching the June 1983 agreement. Specifically, Krueger alleges that Facit violated Krueger's exclusive marketing rights under the agreement by selling and distributing the "Generation III" line of computer support furniture, manufactured by a Danish corporation, Fjello-Jensen. Krueger alleges that the Generation III line is a "knock-off, virtually identical to the 920 Series" furniture that Krueger alone could market under the June 1983 agreement.

In January 1984, the parties entered into an agreement settling litigation commenced by Krueger in United States District Court

for the Eastern District of Wisconsin. As part of this settlement, Facit agreed that it would discontinue selling the Generation III line.

In April 1984, Third-Party Defendant HFT, a New Hampshire Corporation with its principal place of business in New Hampshire, was incorporated. In May 1984, HFT purchased the Facit Furniture Division. During 1985, HFT distributed furniture to more than 15 independent representatives, who sold more than $4 million of HFT furniture.

In the instant action, Third-Party Plaintiff Krueger alleges that Facit founded HFT for the purpose of marketing the Generation III furniture which Facit could not market after signing the 1984 settlement agreement. Krueger's counterclaims filed in the instant action include a cause of action alleging tortious interference with contractual relations against Jahn, Facit's former president; Morse, the former general manager of Facit's office furniture division; and HFT. Krueger also has brought a counterclaim alleging unfair competition against Facit and HFT.

Since the date of the settlement, both Jahn and Morse have resigned from their positions with Facit. Morse now serves as president of HFT, and Jahn serves as chairman of the HFT board of directors. Morse and Jahn also are among the principal owners of HFT stock.

Jahn is a resident of New Hampshire and a citizen of Sweden. Morse is both a resident and a citizen of New Hampshire. Since 1983, both Jahn and Morse have worked in New Hampshire, and have visited New York three to four times each year on business trips for Facit or HFT. With the exception of these business trips, Jahn and Morse have traveled to New York only on an occasional shopping trip. Neither Morse nor Jahn owns any real property in New York, and neither defendant has derived any income from this state unrelated to his HFT salary and stock earnings.

## DISCUSSION

Third-Party Defendants Jahn and Morse move to dismiss Krueger's action, arguing that this Court lacks personal jurisdiction. Third-Party Plaintiff Krueger responds that the regular visits of Jahn and Morse as business representatives for Facit or HFT constitutes sufficient contacts with the state of New York to confer jurisdiction over these defendants. In the alternative, Krueger argues that New York long-arm provisions confer jurisdiction over Jahn and Morse. For the reasons set forth below, defendants' motion to dismiss is granted.

"Jurisdictional basis is satisfied if the forum where the action is brought has minimum contacts with the parties." *Ackermann v. Levine*, 610 F.Supp. 633, 641 (S.D. N.Y.1985), *aff'd in part, rev'd in part on other grounds*, 788 F.2d 830 (2d Cir.1986); *accord International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).[1] "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958).

The occasional New York shopping trips made by Jahn and Morse do not provide sufficient contacts to establish New York jurisdiction over these defendants. *See, e.g., Sayles Biltmore, Inc. v. Soft-Fab Textile Processors, Inc.*, 440 F.Supp. 1010, 1013 (S.D.N.Y.1977) (single visit to New York held insufficient to establish jurisdiction); *Concrete Detailing Services, Inc. v. Thomsson Steel Co., Inc.*, 411 F.Supp. 1021, 1022 (S.D.N.Y.1976) (same). Krueger does not argue that these shopping trips would support New York jurisdiction over Jahn and Morse, but instead focuses on the

---

1. "Personal jurisdiction over a defendant in a diversity action is governed by the law of the forum in which the court sits." *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986); *accord Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir.1963) (en banc). Accordingly, New York state law governs this Court's jurisdiction over Third-Party Defendants Jahn and Morse.

three to four annual business trips made by these New Hampshire residents.

"It is well established that a corporate officer acting on corporate business does not thereby become amenable to suit in his or her personal capacity in that jurisdiction." *Trafalgar Capital Corp. v. Oil Producers Equipment,* 555 F.Supp. 305, 310 (S.D.N.Y.1983); *Louis Marx & Co. v. Fuji Seiko Co.,* 453 F.Supp. 385, 389 (S.D. N.Y.1978). "The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981); *accord Thomson McKinnon Securities v. Hamiltonian Industries, Inc.,* 610 F.Supp. 5, 7 (S.D.N.Y.1985).[2]

In arguing that this Court possesses jurisdiction over Jahn and Morse, defendants assert that this case falls within an exception to the fiduciary shield doctrine. "[W]hen the corporation for which the individual defendant purports to act is merely a shell he created to further his own personal interests, he may not invoke the fiduciary shield doctrine." *Soltex Polymer Corp. v. Fortez Industries, Inc.,* 590 F.Supp. 1453, 1458 (E.D.N.Y.1984); *accord Marine Midland Bank v. Miller,* 664 F.2d 899, 902–03 (2d Cir.1981). Where a court has yet to hold an evidentiary hearing, as in the instant case, a plaintiff must make a *"prima facie* showing" that a defendant's company is nothing more than a shell cor-

poration to defeat a jurisdictional motion to dismiss. *Id.* at 904; *accord Catsimatidis v. Innovative Travel Group, Inc.,* 650 F.Supp. 748, 750–51 (S.D.N.Y.1986).

In the instant case, Krueger has failed to make any showing that HFT is merely a shell corporation designed simply to further the "personal interests" of Jahn and Morse. As admitted in Krueger's own papers, HFT consummated furniture sales totaling more than $4 million in 1985. HFT currently distributes this furniture through about 15 independent representatives, located across the country. HFT thus appears far different from a "consulting firm" consisting of "no more than a telephone number and stationery," which the Second Circuit panel hearing *Marine Midland Bank* described as a shell corporation. *Id.* at 904.

Krueger also emphasizes that Jahn and Morse own most of HFT's stock. However, in a case where two individual defendants were the sole owners of a corporation's stock, this Court wrote that "[m]ore than this [fact], however, is required to pierce the corporate veil for jurisdictional purposes." *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.,* 555 F.Supp. 305, 310 (S.D.N.Y.1983). Other than this misplaced emphasis on the ownership of HFT by Jahn and Morse, Krueger has presented the Court with nothing more than conclusory allegations, which provide no support for a finding that HFT constitutes a shell corporation. *See, e.g., Thomson McKinnon Securities, Inc. v. Hamiltonian Industries, Inc.,* 610 F.Supp. 5, 8 (S.D.N.Y.1985); *Soltex Polymer Corp. v.*

---

**2.** One published decision in this district holds that the fiduciary shield doctrine no longer applies in New York. *Guccione v. Flynt,* [1984] Copyright L.Rep. CCH ¶ 25,654, at 18,947 (S.D. N.Y. Apr. 27, 1984) [Available on WESTLAW, DCT database]. However, the Second Circuit Court of Appeals subsequently has written that "the fiduciary shield doctrine appears to survive under New York law." *Cutco Industries, Inc. v. Naughton,* 806 F.2d at 367 (2d Cir.1986). While the *Cutco* decision does not cite *Guccione,* a recent decision in this district explicitly disapproves of the Guccione holding. *Thomson McKinnon Securities v. Hamiltonian Industries,* 610 F.Supp. 5, 7 (S.D.N.Y.1985) (Motley, C.J.). Also, as noted in *Thomson McKinnon Securities,*

most recent decisions in this district have held that the fiduciary shield doctrine continues to apply in New York. *See, e.g., Photo Promotions Associates v. Household International, Inc.,* 584 F.Supp. 1238, 1240 (S.D.N.Y.1984); *Bulk Oil Inc. v. Sun Oil Trading Co.,* 584 F.Supp. 36, 40 (S.D. N.Y.1983); *Goshen Litho, Inc. v. Kohls,* 582 F.Supp. 1561, 1565 (S.D.N.Y.1983).

Accordingly, this Court follows the Second Circuit's decisions in *Cutco Industries, Inc. v. Naughton, supra,* and *Marine Midland Bank, N.A. v. Miller, supra,* which state that the fiduciary shield doctrine continues to apply in New York. To the extent that *Guccione v. Flynt* is inconsistent with these opinions, this Court refuses to follow *Guccione.*

*Fortex Industries, Inc.,* 590 F.Supp. 1453, 1458 (E.D.N.Y.1984). Accordingly, the fiduciary shield doctrine prevents Krueger from establishing jurisdiction based on the New York business trips made by Jahn and Morse.

Similarly, the fiduciary shield doctrine bars invocation of New York's long-arm statute as a basis for jurisdiction over Jahn and Morse. *See* N.Y.Civ.Prac.L. & R. § 302 (McKinney 1972). This statute authorizes jurisdiction over any defendant who "commits a tortious act without the state causing injury to person or property within the state," where the defendant either "regularly does or solicits business ... or derives substantial revenue from goods used or consumed ... in the state," *id.* at § 302(a)(3)(i), or "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce...." *Id.* at § 302(a)(3)(ii).

Krueger's attempt to invoke the long-arm statute fails because Krueger has not shown that Jahn or Morse either "derives substantial revenue from goods used or consumed in the state" of New York, or "derives substantial revenue from interstate commerce." In arguing that these New Hampshire residents derive substantial revenue from outside their home state, Krueger points to the revenues earned by HFT in New York and several other states. However, New York case law states that the fiduciary shield doctrine prevents reliance on corporate earnings as a means of asserting long-arm jurisdiction over individual defendants. *Bulk Oil, Inc. v. Sun Oil Trading Co.,* 584 F.Supp. 36, 41 (S.D.N.Y. 1983) ("It is the individual, and not his corporate employer, who must derive 'substantial revenue' for jurisdiction to attach under section 302(a)(3)(ii)."); *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.,* 555 F.Supp. 305, 311 (S.D.N.Y.

1983); *Lehigh Valley Industries v. Birenbaum,* 389 F.Supp. 798, 805 (S.D.N.Y.1975), *aff'd,* 527 F.2d 87 (2d Cir.1975). Krueger cannot rely on interstate revenues earned by HFT as a basis for asserting New York jurisdiction over Jahn and Morse.

In a final attempt to establish this Court's jurisdiction over Jahn and Morse, Krueger cites another section of New York's long-arm statute, which provides for jurisdiction over "any non-domiciliary ... who ... commits a tortious act within the state...." N.Y.Civ.Prac.L. & R. § 302(a)(2) (McKinney 1972). Krueger argues that the tortious interference with contractual relations alleged in the complaint constitute "tortious acts" conferring New York jurisdiction under this statute.

However, even if the torts alleged by Krueger were committed "within the state" of New York, the long-arm statute does not confer personal jurisdiction over employees or officers who commit tortious acts while acting on behalf of their employers. *See, e.g., Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902–03 (2d Cir.1981), *Soltex Polymer Corp. v. Fortex Industries, Inc.,* 590 F.Supp. 1453, 1463–64 (E.D.N.Y.1984).[3] "Where a corporate agent engages in corporate business for the sole benefit of the corporation, it is difficult to see how the exercise of jurisdiction over one who has conducted no activities on his own behalf 'comports with fair play and substantial justice.'" *Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1348 (E.D.N.Y.1981) (citations omitted). In the instant case, any tortious interference with contractual relations actually committed by Jahn and Morse could have occurred only while these officers were acting on behalf of Facit or HFT. Such acts thus cannot form a basis for jurisdiction over Jahn and Morse.

---

**3.** One district court has stated that the "'fiduciary shield' is, however, inappropriate where a corporate officer 'commits a tortious act within the state'...." *Merkel Associates, Inc. v. Bellofram Corp.,* 437 F.Supp. 612, 619 (W.D.N.Y. 1977). However, this holding in *Merkel Associates* was explicitly rejected by the Second Circuit Court of Appeals in *Marine Midland Bank,*

*N.A. v. Miller,* 664 F.2d 902–03 (2d Cir.1981). This Court thus follows the *Marine Midland* holding that the fiduciary shield doctrine prevents the exercise of long-arm jurisdiction over a non-resident corporate officer, where this officer commits a tortious act while acting on behalf of his employer.

To summarize, Krueger has failed to show that Jahn and Morse possess any contacts with New York independent of acts undertaken on behalf of HFT or Facit. Accordingly, this Court has no basis for exercising jurisdiction over Jahn and Morse.

### CONCLUSION

The motion to dismiss Third-Party Plaintiff Krueger's claims against Third-Party Defendants Jahn and Morse is granted.

SO ORDERED.