■ BRADFORD V. CORYELL, as Executor of WINIFRED A. CORYELL, Deceased, Respondent, v DIME SAVINGS BANK OF NEW YORK, Appellant.—In an action to recover death benefits under a group mortgage life insurance policy, the defendant appeals from an order of the Supreme Court, Westchester County (Dachenhausen, J.), entered November 14, 1985, which denied its motion for summary judgment dismissing the complaint.

Ordered that the order is affirmed, with costs.

The general rule of construction to be used in interpreting insurance policies is that words are to be given their ordinary meaning and, if an ambiguity arises, it should be resolved in favor of the insured (see, Schiff Assocs. v Flack, 51 NY2d 692; Long Is. R. R. Co. v Interboro Mut. Indem. Ins. Co., 84 AD2d 809). At bar, the terms of the insurance policy are ambiguous with regard to whether or not coverage is afforded to a debtor

spouse. Moreover, it is undisputed that the decedent, Winifred Ann Coryell, had made the premium payments on the policy for many years directly to the defendant bank and those payments were never rejected. Where the terms of the contract itself are patently ambiguous, the intent and the conduct of the respective parties raises a triable issue of fact which precludes the granting of summary judgment. Summary judgment is a drastic remedy and should not be granted if there is any doubt as to the existence of a triable issue (see, Andre v Pomeroy, 35 NY2d 361; Cole v Lawas, 116 AD2d 936; Midland Mtge. Corp. v 52nd St. Owners Corp., 106 AD2d 376), and such relief is especially inappropriate in an action based on an ambiguous contract subject to different interpretations (see, River Park Assocs. v Meyerbank Elec. Co., 116 AD2d 709). Bracken, J. P., Rubin and Sullivan, JJ., concur.

Harwood, J., dissents and votes to reverse the order and grant the defendant's motion for summary judgment, with the following memorandum: In July 1971, the decedent and her then spouse, Vincent Coryell, executed a mortgage extension agreement with the defendant bank pertaining to the then marital residence. In September 1971, Mr. Coryell applied for group mortgage protection life insurance. The application required him to provide information concerning his age, occupation and health; he was not required to disclose his marital status. In October 1971, the defendant bank approved the application and issued the policy to Mr. Coryell. The defendant bank asserts without contradiction that, in 1971, only one debtor was eligible for mortgage protection life insurance, but that, in 1976, the group policy was amended to allow coverage for spouses. The plaintiff (the executor of the estate and the son of Winifred Ann Coryell) does not dispute that a solicitation for spousal coverage was sent in 1976 to all insureds including Mr. Coryell, nor does he dispute that neither Mr. Coryell nor the decedent responded to the solicitation.

In 1977, the decedent and Mr. Coryell executed a separation agreement pursuant to which the title to the marital premises was transferred to the decedent alone. In addition to the payment of a sum for maintenance, Mr. Coryell agreed to pay the decedent each month the amount established by the defendant, as mortgagee, due for amortization, interest and real property taxes on the marital premises until satisfaction of the mortgage, sale of the premises or termination of the obligation to pay maintenance because of, inter alia, the death of either party. Both remained liable to the defendant on the

mortgage. It appears that the defendant was not informed of the transfer of title which, in any event, did not, under the terms of the group mortgage protection life insurance policy as reflected in the certificate of insurance, affect Mr. Coryell's status as an insured. Mr. Coryell and the decedent were divorced in 1980. The decedent paid the minimal premium on the policy issued on Mr. Coryell's life from 1977 until her death on July 17, 1981. The plaintiff thereafter demanded payment in the amount of the reduced balance of the mortgage as of July 17, 1981 (approximately $8,000). Asserting that the decedent was not an insured under the policy, the defendant refused, and this litigation ensued.

It is not disputed that the certificate of insurance included in the record accurately reflects the terms of the policy, as amended. According to the "Death Benefit" provision, the defendant is obligated to pay to itself (the creditor) against "the indebtedness of the Debtor" the amount for which the debtor is insured (i.e., the amount of the mortgage) on the date of the debtor's death "[u]pon receipt of due proof of the death of any Debtor *who dies while insured* under the Group Policy * * * If two Debtors are insured * * * for the same indebtedness, only one death benefit is payable in the event of the death of either Debtor, or in the event of the simultaneous death of both debtors" (emphasis added). The insurance certificate defined the term "debtor" as: "any person * * * indebted to the Creditor as a maker of a loan secured by a real estate mortgage * * * *who makes written application* in which he agrees to make the required monthly contributions toward the cost of the insurance, who submits such evidence of insurability as the [defendant] may require, and who has not attained his 65th birthday on the date he makes such application or incurs such indebtedness, whichever is later. In the event two or more persons become indebted to the [defendant] for the same indebtedness * * * only one person and the spouse * * * of such person shall be deemed the Debtors" (emphasis added).

It appears that the latter sentence of the paragraph in the certificate defining "debtor" is the premise for the assertion that a question of fact exists as to whether the plaintiff is entitled to a death benefit pursuant to the policy issued on the life of the *still living* Vincent Coryell. The plaintiff implicitly claims that, because the decedent was indebted to the defendant on the mortgage and because the decedent was, until 1980, the spouse of the named insured, the decedent must be deemed a debtor within the meaning of the policy and that therefore, she is an insured.

I concede that the sentence allegedly creating an ambiguity is inartfully worded. I do not agree, however, that its inclusion in a group policy some five years after approval of Mr. Coryell's application constitutes a basis for interpreting the policy thereupon issued to him as an agreement to also provide coverage on the life of a person for whom no application was filed and approved. Aside from the fact that the decedent was not a "spouse" on the date of her death, an isolated, literal reading of the inartfully worded sentence would, e.g., mandate coverage for the spouse of any debtor even though the spouse is not also indebted on the mortgage, provided someone else was so indebted. In my opinion, that sentence must, to make sense, be read in conjunction with the preceding sentence *(cf., Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172) so as to require the submission and approval of an application for insurance before a spouse becomes an insured debtor whose death mandates the payment of a benefit. Since the decedent made no such application, no death benefit is due.

The plaintiff contended before Special Term that, absent what in my view is an unreasonable construction of the policy provisions *(cf., River Park Assocs. v Meyerbank Elec. Co.,* 116 AD2d 709), the decedent would have had no reason to pay premiums for mortgage protection life insurance once Vincent Coryell transferred his interest in the mortgaged premises to the decedent alone. He urges for the first time on appeal that, based on the decedent's payment of premiums and the defendant's acceptance thereof, a trier of fact could find that an implied contract existed. There is no indication, however, that, until the commencement of this litigation, the defendant was aware of either the transfer of title or the Coryells' marital difficulties and subsequent divorce *(cf., Peck v Genesee Fed. Sav. & Loan Assn.,* 53 AD2d 1019). Moreover, because Vincent Coryell, by virtue of the separation agreement, continued after the transfer of title to provide the funds the decedent used to pay the mortgage, the decedent's reason for her continued payment of the premiums for mortgage protection insurance on his life is self-evident.

There are no facts warranting a trial on the plaintiff's claim for a death benefit on any theory. Summary judgment in the defendant's favor should therefore be granted.